**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KAREN B. BALAS,

*Plaintiff-Appellant,*

v.

HUNTINGTON INGALLS INDUSTRIES, INC., Successor to Northrop Grumman Corporation,

*Defendant-Appellee.*

No. 12-1201

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Arenda Wright Allen, District Judge.
(2:11-cv-00347-AWA-FBS)

Argued: January 31, 2013

Decided: March 15, 2013

Before DUNCAN, WYNN, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Wynn and Judge Floyd joined.

**COUNSEL**

**ARGUED:** Steven Scott Biss, Charlottesville, Virginia, for Appellant. Scott William Kezman, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellee. **ON BRIEF:** Mark E. Warmbier, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Karen B. Balas appeals the district court's denial of relief on her claims of discrimination, retaliation, and hostile work environment, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), as well as wrongful discharge, assault, and battery, brought under Virginia law, against Huntington Ingalls Industries, Inc. ("Huntington Ingalls"), the successor to her former employer, Northrop Grumman Corporation.[1] On appeal, Balas argues that the district court erred in construing the scope of her charge of discrimination, denying her leave to amend her complaint, and granting summary judgment to Huntington Ingalls on her claims of retaliatory discharge, assault, and battery. For the reasons ably articulated by the district court, we affirm.

I.

A.

According to Balas, Huntington Ingalls "subject[ed] her to an ongoing sexually hostile work environment that included unwanted requests from her supervisor for sex, numerous sexual comments, sexually explicit posters knowingly being

---

[1]We refer to Balas's former employer as Huntington Ingalls.

allowed in [her] workplace, employees massaging one another, sexually offensive pictures, and unwanted touching . . . ." J.A. 7. Her complaint centers on the actions of her supervisor, Brad Price, who, she alleges, "frequently and repeatedly commented to [her] about how much he liked her attire and physical appearance"; "referred to [her] as a 'good woman'"; "frequently and repeatedly entered [her] small work space and her personal space"; and "frequently talked about his sex life to [her]." J.A. 7-8. According to Balas's complaint, "[i]n or around April 2009, Mr. Price solicited sex from [her]." J.A. 8.

In August 2009, Balas wore a pair of ripped jeans to work. Price, apparently in response to a complaint, sent her home to change into more appropriate work attire. Balas alleges that men dressed in similarly ripped jeans were not asked to change. She alleges that upon returning to work, she complained to Price that his request for her to change clothes was discriminatory.

In January 2010, Price hugged Balas. Balas alleges that Price "trapped [her] in her work space and willfully, wantonly and forcibly put his arms around [her,] hugging her against her will." J.A. 11-12. It is undisputed, however, that this hug occurred after Balas had given Price a gift of Christmas cookies for his family, and that immediately prior to the hug, Price had thanked her for the cookies and told her, "You never cease to amaze me." J.A. 145.

Balas alleges that she repeatedly complained of gender discrimination and a hostile work environment. She asserts that because of these complaints, she was repeatedly denied promotions.

On February 17, 2010, Balas was fired for falsifying her February 11, 2010 time records. Another female employee was fired the same day for the same infraction. It is undisputed that Balas did not properly account for taking off over

an hour of time. Price alerted Cindi Wolfe, his human resources representative, and Roger Lowman, the department manager, of the time-keeping infraction. The three of them undertook an investigation of the incident. Lowman, who was never made aware of Balas's alleged complaint to Price about the jeans incident, was solely responsible for the decision to fire Balas.

B.

On July 19, 2010, Balas submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC"). She attached to her questionnaire a letter laying out her complaints in greater detail, including being denied opportunities for promotions, a "personal vendetta" Wolfe held against her, and the circumstances of the jeans incident. J.A. 182-84. The EEOC prepared a charge on her behalf, alleging sex discrimination and retaliatory termination, which Balas signed on July 26, 2010. The only specific occurrences referenced in the charge were her termination and the jeans incident. The EEOC charge listed February 17, 2010—the date of her termination—as the "earliest" and "latest" date of discrimination. The "continuing action" box on the charge was left blank.

On October 2, 2010, Balas sent a second letter to the EEOC providing further details related to Price and the alleged sexual harassment. Later that month, the EEOC prepared an amended charge, which included the allegation that Price inappropriately hugged her in January 2010. The hug was the only additional fact alleged in the amended charge. The earliest date of discrimination section was left blank, but, again, the "continuing action" box was not checked.

The EEOC dismissed Balas's charge and issued her right to sue letter on February 25, 2011. She subsequently filed suit in the district court pro se. In her complaint, Balas alleged Title VII claims for failure to promote, retaliatory termination, and

hostile work environment based on sexual harassment. She also alleged state law claims for wrongful discharge, assault, battery, and intentional infliction of emotional distress.

Huntington Ingalls filed a motion for judgment on the pleadings, which the district court granted in part. The court determined that it lacked jurisdiction to consider allegations in Balas's Title VII claim that were not included in her EEOC charge. In determining the scope of that charge, the court declined to consider Balas's intake questionnaire or letters to the EEOC. The court concluded that Balas only properly alleged discriminatory or retaliatory termination and harassment by her supervisor. It went on, however, to dismiss her harassment claim.

In her complaint, Balas alleged that Huntington Ingalls wrongfully discharged her by terminating her in order to silence her opposition to discrimination and harassment in the workplace, in violation of what she asserted is the public policy articulated in the Virginia Human Rights Act ("VHRA"), Va. Code § 2.1-714 *et seq.* Balas sought to amend her complaint to include other sources of public policy in support of her claim. The district court determined that Balas's proposed amendments would be futile because the complaint, even if amended, would not sufficiently state a claim for wrongful discharge. The court thus denied Balas leave to amend her complaint and dismissed her wrongful discharge claim.

The court found that Balas had stated a claim of retaliatory termination under Title VII and denied Huntington Ingalls's motion for judgment on the pleadings as to that claim. In considering the merits of Balas's retaliatory termination claim on summary judgment, the court concluded that Balas sufficiently alleged that she had engaged in a protected activity in complaining to Price about discrimination and that Huntington Ingalls took an adverse employment action against her by firing her. It determined, however, that she failed to present more than merely colorable evidence of a causal link between

the two events, and granted summary judgment to Huntington Ingalls.

The court also determined that Balas had stated claims for assault and battery. Upon considering the merits of those claims, however, it concluded that Price's hug could not amount to either a battery or an assault, and granted summary judgment to Huntington Ingalls.

Balas now appeals the district court's dismissal of the majority of her Title VII claims on the basis of lack of jurisdiction, its denial of leave to amend her complaint, and its grant of summary judgment to Huntington Ingalls on her retaliatory termination, assault, and battery claims.[2]

## II.

Balas first argues that the district court erred by considering only her EEOC charge—and not the intake questionnaire and letters she sent to the EEOC—in evaluating her Title VII claims. She also argues that she should have been granted leave to amend her complaint to include additional sources of public policy upon which to base her wrongful discharge claim.

Balas further challenges the district court's grant of summary judgment to Huntington Ingalls. With respect to her Title VII retaliatory discharge claim, she argues that a reasonable person could find a connection between her alleged complaints to Price regarding sexual harassment and discrimination and Lowman's decision to fire her. She also argues that she presented sufficient evidence from which a jury could find that Price committed the torts of assault and battery.

---

[2]Balas does not challenge the district court's dismissal of her Title VII harassment claim, her wrongful discharge claim based on the VHRA, or her intentional infliction of emotional distress claim.

We address each of these arguments in turn.

A.

We first take up Balas's argument that the district court erred in considering only her amended EEOC charge, and not the contents of her intake questionnaire or the two letters she submitted to the EEOC. The import of her argument derives from the fact that federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). We review questions of subject matter jurisdiction de novo. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815 (4th Cir. 2004) (en banc).

1.

An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process. *See* 42 U.S.C. § 2000e-5(b). The requirement of filing a charge with the EEOC against the party sued serves two principal purposes: "'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'" *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)). The filing of an administrative charge, therefore, "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, the charge itself serves a vital function in the process of remedying an unlawful employment practice.

An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. 42 U.S.C. § 2000e-5(b); 29 C.F.R.

§ 1601.6. After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge. This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it. *See* U.S. Equal Employment Opportunity Comm'n, *The Charge Handling Process*, available at http://www.eeoc.gov/employees/process.cfm (last visited Feb. 15, 2013).

The EEOC sends a notice and copy of the charge to the employer. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.14. This notice gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally. *See Chacko*, 429 F.3d at 510. Concurrently, the EEOC investigates the charge.

The filing of a charge also "initiates agency-monitored settlement, the primary way that claims of discrimination are resolved." *Id.* This procedure "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000). Prior to making any determination as to the merit of a charge, the EEOC may encourage and facilitate settlement between the parties. 12 C.F.R. § 1601.20.

If the EEOC finds "reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.24. If the EEOC cannot reach a voluntary settlement with the employer, the agency may file a lawsuit or issue a Notice-of-Right-to-Sue to the employee. 29 C.F.R. § 1601.27-28. If the EEOC does not make a reasonable cause determination or the employee requests a right to sue, the agency may issue one, thus allowing the employee to file suit. 29 C.F.R. § 1601.28.

2.

In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). If the plaintiff's Title VII claims "'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko*, 429 F.3d at 506 (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency. We have noted that "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999). *Sloop*'s reasoning applies here, despite Balas's contentions to the contrary. Balas argues that her letters, written before formal charges were filed, should be treated differently. We disagree. Given that Balas's employer was never apprised of the contents of her letters (nor could she expect it to have been), the point at which they were written makes no difference for the goals of putting her employer on notice or encouraging conciliation.

While we recognize that EEOC charges often are not completed by lawyers and as such "'must be construed with utmost liberality,'" *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)), we are not at liberty to read

into administrative charges allegations they do not contain. Instead, persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may, as Balas did, file an amended charge with the EEOC. *See* 29 C.F.R. § 1601.12(b).[3] The intake questionnaire and the letters Balas submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII.

Balas also argues that she should not be penalized for the EEOC's "negligence" in failing to send a copy of her intake questionnaire and letters to the EEOC to her employer.[4] However, she points to no authority—and we find none—requiring the EEOC to undertake such an action or providing the EEOC with the discretion to do so.[5] We decline to impose such an obligation upon the EEOC.

---

[3]Balas suggests that we should read the regulation governing amendments to EEOC charges, which provides in part that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein," 29 C.F.R. § 1601.12(b), to mean that her letters should be considered for clarification and amplification of her allegations. The regulation by its terms applies to the amendment of the charging document itself, not to extrinsic ones. Balas's is an implausible reading of the regulation and one for which she advances no support.

[4]Balas made this contention for the first time at oral argument. While issues not included in the opening brief are generally considered waived, *W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 389 (4th Cir. 2011), we discuss her contention briefly for the sake of comprehensiveness.

[5]The EEOC is simply required to serve the respondent with a copy of the charge, or, when providing a copy of the charge would impede the law enforcement functions of the EEOC, notice of the charge. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.14. As the EEOC clarifies on its intake questionnaire, the "principal purpose" of that questionnaire is "to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate." J.A. 181. While the questionnaire "may serve as a charge if it meets the elements of a charge," *id.*, the EEOC is under no obligation to provide it to a respondent employer along with a charge. None of the "routine uses" of the questionnaire involve sending it or attached documents to respondent employers. *Id.*

Any Title VII claims based on allegations included only in Balas's intake questionnaire and letters are therefore outside the jurisdiction of the federal courts. The district court properly declined to consider those allegations not included in Balas's EEOC charge.

B.

We next consider the district court's denial of leave for Balas to amend her complaint. Leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "'[L]eave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). The court determined that Balas's proposed amendments would be futile. We review the denial of leave to amend a complaint for abuse of discretion. *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001).

Virginia generally adheres to the common law doctrine of at-will employment. *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 916-17 (Va. 1987). However, an at-will employee may bring a tortious wrongful discharge claim if her termination violates a state public policy as expressed in a statute. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985). The Supreme Court of Virginia has consistently characterized this exception as "narrow." *City of Virginia Beach v. Harris*, 523 S.E.2d 239, 245 (Va. 2000). That court has recognized a "discharge . . . based on [an] employee's refusal to engage in a criminal act" as a basis for a wrongful discharge action. *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002).

Balas contends that she was discharged for refusing to engage in illegal activity and sought to amend her complaint

to reference additional crimes she declined to commit. Specifically, she would have amended her complaint to allege that her discharge followed from her refusal to commit three crimes under Virginia law: (1) fornication, *see* Va. Code § 18.2-344; (2) lewd and lascivious behavior, *see* Va. Code § 18.2-345; and (3) sexual assault, *see* Va. Code § 18.2-61. We consider each in turn.

In support of her argument regarding the first of these policies, Balas cites *Mitchem v. Counts*, 523 S.E.2d 246 (Va. 2000). There, the Supreme Court of Virginia determined that a plaintiff sufficiently stated a claim for wrongful discharge based on Virginia statutes proscribing fornication and lewd and lascivious behavior. However, as the district court correctly determined here, *Mitchem*'s application of Virginia Code § 18.2-344, prohibiting fornication, was abrogated by *Martin v. Ziherl*, 607 S.E.2d 367 (Va. 2005), making Balas's proposed amendment futile. In *Martin*, the Virginia Supreme Court struck down § 18.2-344 as unconstitutional, "because by subjecting certain private sexual conduct between two consenting adults to criminal penalties it infringes on the rights of adults to 'engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution.'" 607 S.E.2d at 371 (quoting *Lawrence v. Texas*, 539 U.S. 558, 564 (2003)).

Amending her complaint to reference Virginia's public policy against lewd and lascivious behavior would likewise be futile. Virginia Code § 18.2-345, which makes it illegal to "lewdly and lasciviously associate and cohabit" and to engage in "open and gross lewdness and lasciviousness," does not apply to the facts Balas alleges in her complaint. Price never proposed cohabitation, and the hug Balas complains of did not even begin to approach the sort of "open and gross lewdness" § 18.2-345 prohibits. *See Everett v. Commonwealth*, 200 S.E.2d 564 (Va. 1973).[6]

---

[6]In an unpublished opinion, *VanBuren v. Grubb*, 471 F. App'x 228, 233-34 (4th Cir. 2012), we determined that an employee complaining that

Balas's final proposed amendment would be even farther from the mark. She would amend her complaint to allege that she was wrongfully discharged for not consenting to engage in the crime of sexual assault. Her proposed argument is untenable, as it is legally impossible to consent to sexual assault. Lack of consent is an element of the crime of sexual assault, so consensual sexual activity simply cannot constitute sexual assault. Va. Code § 18.2-61. Therefore, as a matter of law, "had [Balas] consented to having [Price] touch her, there would have been no crime." *Mitchem*, 523 S.E.2d at 253. Any complaint of wrongful discharge on this basis would be unavailing.

Because the district court correctly determined that amending her complaint would be futile, it did not abuse its discretion in denying Balas leave to do so.

## C.

Next, we turn to Balas's Title VII claim of retaliatory discharge. We review the district court's grant of summary judgment de novo. *Castillo v. Emergency Med. Assocs.*, 372 F.3d 643, 646 (4th Cir. 2004). We draw all reasonable inferences in favor of Balas, the non-moving party. *Id.*

"In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse

---

she was fired for refusing to engage in adultery and lewd and lascivious cohabitation had adequately alleged wrongful discharge in violation of established public policy. However, the conduct at issue in *Van-Buren*—including "unwelcome contact, fondling, and touching," whereby the defendant would "rub [the plaintiff's] back, waist, breasts, and other inappropriate areas[ ] and attempt to kiss her," 471 F. App'x at 230—invited the plaintiff to engage in acts characterized by a degree of lewdness or lasciviousness not present here. Moreover, as an unpublished opinion, *VanBuren* does not control the outcome of this case.

employment action against her; and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). Balas's alleged complaint of discrimination to Price regarding the jeans incident was a protected activity, and her termination from the company was an adverse employment action. For a successful Title VII claim, Balas must show a causal connection between these two incidents.

Balas does not dispute that Lowman, the manager responsible for firing her, was not aware of her complaint to Price regarding the jeans incident. However, Balas argues that Price's involvement in the investigation that led to her termination constitutes evidence that he directly influenced that decision.

Title VII does not "limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employer." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290 (4th Cir. 2004). However, we have refused to endorse a construction of Title VII that would treat a "subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision [as] a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." *Id.* at 291. For Balas's retaliatory termination claim to succeed, she must demonstrate that Price "possessed such authority as to be viewed as the one principally responsible for the decision." *Id.* It is fatal to her claim that she presents no evidence to that effect.

Because Lowman did not know of the protected activity, and because Price, who allegedly influenced him, was not principally responsible for the decision to terminate Balas's employment, we affirm the district court's grant of summary judgment to Huntington Ingalls on the retaliatory discharge claim.

D.

Finally, we turn to the district court's summary adjudication of Balas's assault and battery claims. Again, we review the court's grant of summary judgment de novo. *Castillo*, 372 F.3d at 646.

Battery is "an unwanted touching which is neither consented to, excused, nor justified." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). Assault entails "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Id.* (citing Restatement (Second) of Torts § 21 (1965)). "Although these two torts 'go together like ham and eggs,' the difference between them is 'that between physical contact and the mere apprehension of it. One may exist without the other.'" *Id.* (quoting W. Page Keeton, *Prosser and Keeton on Torts* § 10 at 46).

1.

For contact to rise to the level of battery, it must be "offensive," Restatement (Second) of Torts § 18, and "done in a rude, insolent, or angry manner," *Crosswhite v. Barnes*, 124 S.E. 242, 244 (Va. 1924). "A bodily contact is offensive if it offends a reasonable sense of personal dignity." Restatement (Second) of Torts § 19. As Balas concedes, the quality of the act's offensiveness is judged by an objective standard, not by whether the plaintiff found the act offensive. *Id.* at § 18.[7]

Balas argues that whether she consented to the hug is a question of fact appropriate for a jury, although she does not

---

[7]The Restatement further clarifies that for a contact to amount to battery, it "must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity." Restatement (Second) of Torts § 19 cmt. a.

dispute that she never told Price to stop or that the hug was unwelcome. To the contrary, rather than objecting to the hug itself, she testified that it was the manner of the hug that made her uncomfortable: "the way [Price] swooped [her] up at [her] waist, or the way he grabbed [her] was what felt offensive." J.A. 128.

Even if the hug was not consented to, it was "excused" or "justified," and a reasonable person could not find it objectively offensive. *See Koffman*, 574 S.E.2d at 261. To constitute battery, the challenged contact must be "unwarranted by the social usages prevalent at the time and place at which it is inflicted." Restatement (Second) of Torts § 19 cmt. a. Balas had just given Price a gift of Christmas cookies. Immediately before hugging Balas, Price thanked her and told her that she never ceased to amaze him. Given the circumstances surrounding the hug, we determine that Balas raises no genuine question of material fact as to whether the hug was objectively offensive.

2.

For conduct to constitute assault, it must be intended to cause harmful or offensive contact or apprehension of that contact. *Koffman*, 574 S.E.2d at 261. The conduct must also cause an objectively reasonable apprehension of an imminent battery. *Id.* Balas presented no evidence that the hug was harmful or offensive, or that Price intended the hug to involve any contact beyond the hug itself or intended to make Balas think that it would. The circumstances indicate that the requisite intent was absent, and any apprehension of an imminent battery Balas might have felt was not objectively reasonable.

We therefore affirm the district court's grant of summary judgment as to the assault and battery claims.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.