**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1510**

───────────

KELLY M. HOFFMAN,

Plaintiff – Appellant,

v.

INOVA HEALTH CARE SERVICES; NORTH AMERICAN PARTNERS IN
ANESTHESIA (VIRGINIA) LLC,

Defendants – Appellees.

───────────

**No. 24-1518**

───────────

LORRAINE BIONDI AUSTIN,

Plaintiff – Appellant,

v.

INOVA HEALTH CARE SERVICES,

Defendant – Appellee.

───────────

Appeals from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:23-cv-01696-MSN-IDD;
1:23-cv-01698-MSN-JFA)

───────────

Argued:  September 12, 2025                    Decided:  March 3, 2026

Before KING, RUSHING, and BENJAMIN, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge King and Judge Benjamin joined.

**ARGUED:**  Timothy Bosson, BOSSON LEGAL GROUP, Fairfax, Virginia, for Appellants.  Nancy North Delogu, LITTLER MENDELSON, P.C., Washington, D.C.; Scott Andrew Siegner, OGLETREE DEAKINS, Richmond, Virginia, for Appellees.  **ON BRIEF:**  Isaiah R. Kalinowski, Arie M. Jones, BOSSON LEGAL GROUP, Fairfax, Virginia, for Appellants.  W. Ryan Waddell, OGLETREE DEAKINS, Richmond, Virginia, for Appellee North American Partners in Anesthesia (Virginia), LLC.  Alexander P. Berg, Lauren M. Bridenbaugh, LITTLER MENDELSON, P.C., Tysons Corner, Virginia, for Appellee Inova Health Care Services.

RUSHING, Circuit Judge:

Inova Health Care Services suspended clinical privileges at its medical facilities for Plaintiffs Kelly Hoffman and Lorraine Austin after they refused Covid-19 vaccinations. North American Partners in Anesthesiology (NAPA) subsequently terminated Plaintiffs' employment. In separate complaints, Hoffman and Austin both sued Inova for discrimination, and Hoffman also sued NAPA. The district court dismissed both complaints for failure to state a claim, finding that neither Plaintiff plausibly alleged Inova was her employer and that Hoffman did not exhaust the administrative process before suing NAPA. Considering these two cases together, we affirm in full.

I.

Plaintiffs Hoffman and Austin are Certified Registered Nurse Anesthetists (CRNAs) who were employed by American Anesthesiology of Virginia, a subsidiary of NAPA. American Anesthesiology contracted exclusively with Inova facilities, while NAPA maintained contractual arrangements with other medical facilities beyond Inova.

By contract, American Anesthesiology had the sole and exclusive right to provide anesthesia services at Inova Loudoun Hospital and Inova Loudoun Ambulatory Surgery Center. Consistent with that arrangement, American Anesthesiology supplied the physicians and CRNAs to perform anesthesia services at both facilities. During their employment with American Anesthesiology, Hoffman and Austin worked exclusively at these Inova facilities—Hoffman for five years and Austin for twenty.

In 2022, Inova denied Plaintiffs' requests for exemptions from its Covid-19 vaccination policy. After Plaintiffs refused to be vaccinated, Inova suspended their clinical

3

privileges effective August 1.  Approximately two months later, NAPA terminated their employment.

Austin sued Inova, alleging it violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Virginia Human Rights Act (VHRA), Va. Code § 2.2-3900 *et seq.*  Separately, Hoffman sued Inova and NAPA, asserting claims under Title VII, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the VHRA.  Both Plaintiffs alleged that Inova was their joint employer with NAPA.  Both NAPA and Inova moved to dismiss the complaints.

After a hearing, the district court granted the motions to dismiss.  The court dismissed Hoffman's claims against NAPA because her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) did not name NAPA but only Inova.  As a result, the court concluded, Hoffman had failed to exhaust the administrative process with respect to her claims against NAPA.  As for Inova, the court found Plaintiffs' allegations insufficient to allege it was their employer, as was necessary for liability under each statutory scheme on which Plaintiffs relied.  But the court granted Plaintiffs' requests for the opportunity to amend their complaints regarding Inova.  After Plaintiffs filed amended complaints, Inova again moved to dismiss and the district court dismissed both complaints with prejudice.  Applying the factors from this Court's decision in *Butler v. Drive Automotive Industries of America, Inc.*, 793 F.3d 404 (4th Cir. 2015), the district court concluded that Plaintiffs again had not plausibly alleged that Inova was their employer for purposes of Title VII, the ADA, or the VHRA.

Plaintiffs each appealed, and we consolidated their cases for oral argument.

4

## II.

We review de novo a decision to grant a motion to dismiss. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 615–616 (4th Cir. 2020). "When doing so, we 'accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023) (quoting *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient facts to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mere "labels and conclusions . . . will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III.

We begin with whether Plaintiffs plausibly alleged that Inova was their employer. Title VII, the ADA, and the VHRA prohibit covered employers from engaging in certain types of discrimination. *See* 42 U.S.C. §§ 2000e-2(a), 12111(2), 12112(a); Va. Code § 2.2-3905(B)(1). It is undisputed that NAPA, not Inova, formally employed Plaintiffs. But "multiple entities may simultaneously be considered" an individual's employer for purposes of Title VII under the "joint employment doctrine" adopted by this Court. *Butler*, 793 F.3d at 410. That doctrine focuses on "the substance of the employment relationship" to "prevent[] those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency." *Id.* (internal quotation marks omitted).

5

This Court uses a nine-factor test to determine "which entities actually exercise control over an employee" such that they can rightly be considered an employer under Title VII. *Id.* at 409. Those factors are:

> (1) authority to hire and fire the individual;
>
> (2) day-to-day supervision of the individual, including employee discipline;
>
> (3) whether the putative employer furnishes the equipment used and the place of work;
>
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
>
> (5) the length of time during which the individual has worked for the putative employer;
>
> (6) whether the putative employer provides the individual with formal or informal training;
>
> (7) whether the individual's duties are akin to a regular employee's duties;
>
> (8) whether the individual is assigned solely to the putative employer; and
>
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414. The first three factors "are the most important." *Id.* However, "'no one factor is determinative,'" and "courts can modify the factors to the specific industry context." *Id.* at 414–415 (quoting *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997)).

Our "principal guidepost" in the joint employer analysis is "the common-law element of control."[1]  *Id.* at 414 (internal quotation marks omitted).

Considering these factors, we agree with the district court that Plaintiffs have not plausibly alleged that Inova was their employer.

First and significantly, Plaintiffs have not plausibly alleged that Inova had the "authority to hire and fire" them.  *Id.*  Hoffman alleges she "was hired by American Anesthesiology," which "has since been purchased by NAPA."  Hoffman J.A. 202.  Austin likewise alleges she was hired "by Loudoun Anesthesia Associates, which was acquired by American Anesthesiology," which was then acquired by NAPA.  Austin J.A. 145–146.  Neither alleges that Inova had the power to hire them or was involved in their hiring.  As for the authority to fire, Hoffman alleges that her employment contract with American Anesthesiology "provided that she would be terminated for cause if Inova demanded that she be removed from providing services at its facility."  Hoffman J.A. 202.  The contract actually states that such a demand by a facility provides "[c]ause" for termination, as determined by American Anesthesiology "in its sole discretion."[2]  Hoffman J.A. 60.  In

---

[1] The ADA and the VHRA use definitions of "employer" analogous to that in Title VII.  *See* 42 U.S.C. §§ 2000e(b), 12111(5); Va. Code § 2.2-3905(A).  The parties do not contest the district court's decision to apply the same joint employment doctrine from Title VII to those statutes as well.  *Cf. Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003) (calling "the common-law element of control" the "principal guidepost" for determining whether certain individuals were "employees" under the ADA); *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (applying the *Butler* factors to an ADA claim).

[2] We can consider the contract at this early stage of the proceedings because it is integral to Hoffman's complaint and its authenticity is undisputed.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

7

other words, Inova's decision denying Hoffman access to its facilities gave NAPA a contractual basis to fire her if NAPA, in its discretion, chose to do so. The authority lay with NAPA, not Inova. Austin, for her part, does not allege that Inova influenced NAPA's decision to fire her or that it had any authority to do so.

Plaintiffs attempt to analogize their allegations to the facts of *Butler*, but the comparison is inapt. In *Butler*, the putative employer "direct[ed]" the staffing agency to replace the plaintiff, and the staffing agency then fired her. 793 F.3d at 415. A manager for the staffing agency testified that he could not recall an instance when the staffing agency failed to terminate an employee upon a request from the putative employer. *Id.* Here, by contrast, Plaintiffs do not allege that Inova directed NAPA to fire them or had the authority to do so. Rather, as Hoffman alleges, she lost her clinical privileges at Inova and months later NAPA terminated her employment. Plaintiffs suggest that their employment was contingent on access to Inova's facilities because American Anesthesiology contracts exclusively with Inova. But in their complaints Plaintiffs admit they were NAPA employees, and they do not allege that NAPA contracted exclusively with Inova facilities.[3]

Second, regarding day-to-day supervision, Plaintiffs say little. Each Plaintiff alleges that Inova "exercised oversight over" her work and "exercised control over [her] delivery of her professional services." Hoffman J.A. 203; Austin J.A. 146. Their complaints, however, leave these "naked assertions" largely without "further factual enhancement."

---

[3] In their briefs on appeal, Plaintiffs indicate that, after Inova suspended their privileges, NAPA "presumably considered other jobs" for them before ultimately terminating their employment. Hoffman Reply Br. 8; Austin Reply Br. 7.

8

*Iqbal*, 556 U.S. at 678 (internal quotation marks and brackets omitted). Plaintiffs' complaints do not identify any individual who supervised their work, either by name or title, even though Virginia law requires CRNAs to practice under the supervision of a licensed doctor. *See* Va. Code § 54.1-2957(C). Plaintiffs do not identify any individual in their chain of command. We note, however, that the right to perform anesthesia services at these Inova facilities belonged solely and exclusively to physicians and CRNAs employed by American Anesthesiology.[4]

The only example Plaintiffs offer regarding Inova's purported control over their work is that "Inova maintained control over whether [a] medication could be approved for [a] patient; Inova could deny use of a particular medication, or could set a policy for the conditions under which the medication could or could not be used." Hoffman J.A. 203; Austin J.A. 146. We have recognized, however, that a measure of control over "medical services rendered at hospitals" is not "a reliable indicator" of an employer-employee relationship, because a "hospital must assert a degree of . . . control over every [medical provider's] work—whether an employee, an independent contractor, or a [provider] merely with privileges—to discharge its own professional responsibility to patients." *Cilecek*, 115 F.3d at 260, 262. For that reason, Inova's general authority over which medications CRNAs may dispense to patients in Inova facilities does not advance the plausibility of an employment relationship between Plaintiffs and Inova.

---

[4] Plaintiffs object to the Court considering the contract between Inova and American Anesthesiology because the version Inova produced in the district court is heavily redacted. Like the district court, we conclude we can consider the contract because it is integral to the complaints and its authenticity is undisputed. *See Goines*, 822 F.3d at 166.

Plaintiffs also offer one example of Inova allegedly exercising authority over their work schedule. By contract, the responsibility for scheduling physicians and CRNAs to provide anesthesia services at the Inova facilities lay with American Anesthesiology, and it was obligated to notify Inova of any changes to the schedule. In their complaints, Hoffman and Austin make identical allegations about an incident "when something troubling happened" while they were on duty in 2022 and "certain Inova staff offered" that Hoffman and Austin could "take the remainder of the day off" but "other Inova staff later disciplined" them for doing so. Hoffman J.A. 203; *see* Austin J.A. 146–147. Accepting the truth of this allegation, one instance of an Inova employee, apparently erroneously, telling Hoffman and Austin they could leave work early does not raise a reasonable inference that Inova exercised daily supervision over them, especially in view of the dearth of factual allegations pertinent to "day-to-day, practical control of the employee[s]." *Butler*, 793 F.3d at 414; *see Iqbal*, 556 U.S. at 678 (describing facial plausibility).

Third, "whether the putative employer furnishes the equipment used and the place of work" is not probative of an employer-employee relationship in this context. *Butler*, 793 F.3d at 414; *see Cilecek*, 115 F.3d at 262 ("Similarly, that Cilecek used instruments of the hospital emergency room that were supplied by the hospital is also inherent in the provision of emergency medical services and likewise is not a reliable indicator of employee status."). As CRNAs providing anesthesia services to patients at an Inova hospital or surgery center, Plaintiffs worked at Inova facilities and used Inova equipment. But in the healthcare context, the use of hospital equipment and facilities is standard practice "in almost every case," whether the healthcare provider is an employee of the

10

hospital or not. *Cilecek*, 115 F.3d at 262. Such use is therefore not a reliable indicator of joint employment.[5] *See id.*; *Butler*, 793 F.3d at 415 (emphasizing that "the consideration of factors must relate to the particular relationship under consideration" (internal quotation marks omitted)).

Fourth, neither Plaintiff alleges that Inova had "possession of and responsibility over [their] employment records, including payroll, insurance, and taxes." *Butler*, 793 F.3d at 414. They allege that Inova possessed records about their licensure, credentialing, and vaccination status, but that information is relevant to ensuring appropriate patient care and is not indicative of an employment relationship.

Fifth, Hoffman and Austin allege they worked at Inova facilities—and, pertinent to the eighth factor, solely at Inova facilities—for five years and twenty years, respectively. While relevant, these allegations communicate little, if anything, about whether Inova "actually exercise[d]" "significant control" over Plaintiffs while they were NAPA employees. *Butler*, 793 F.3d at 409, 410 (internal quotation marks omitted).

Sixth, regarding "formal or informal training," *id.* at 414, Plaintiffs allege that Inova provided training about its charting system and equipment, workplace harassment, and patient privacy law and also debriefed staff after negative patient outcomes. As the district

---

[5] Plaintiffs rely on *Crump v. TCoombs & Assocs., LLC*, No. 2:13-CV-707, 2015 WL 5601885 (E.D. Va. Sept. 22, 2015). In that case, the district court found that the Navy jointly employed a physician assistant where the Navy reviewed her application, interviewed her, exercised day-to-day supervision over her in the same manner as government personnel, assigned her the same duties as government personnel, and possessed unilateral authority to transfer her to any Navy medical facility within a fifty-mile radius. *Id.* at *19, *20, *23. Plaintiffs have not alleged similar facts here, making *Crump* inapposite.

court observed, and Plaintiffs do not address on appeal, "these trainings largely encompass those Inova is obligated to provide under federal law or to ensure an appropriate standard of patient care" vis-à-vis all personnel treating patients at their facilities, regardless of employment status. *Austin v. Inova Health Care Servs.*, No. 1:23-CV-1698 (MSN/JFA), 2024 WL 2871395, at *4 (E.D. Va. May 7, 2024). Neither Plaintiff alleges that Inova trained them in providing anesthesia services, which was their unique responsibility as CRNAs, distinct from Inova's employees.

Seventh, Hoffman and Austin have not plausibly alleged that their duties as CRNAs were "akin to a regular employee's duties." *Butler*, 793 F.3d at 414. Each Plaintiff alleges that "much of her work was focused on tasks that were specific to providing anesthesia," a job that regular Inova employees did not perform and that was reserved exclusively for American Anesthesiology employees. Hoffman J.A. 204; Austin J.A. 148. Plaintiffs allege they also performed "generalized patient care tasks that were commonly performed by Inova staff nurses," such as "placing an IV line" or "repositioning a patient for their comfort." Hoffman J.A. 204; Austin J.A. 148. But nothing suggests that Plaintiffs performed these patient care tasks outside their specialized role as CRNAs.

Lastly, Plaintiffs do not allege that they subjectively "intended to enter into an employment relationship" with Inova. *Butler*, 793 F.3d at 414 & n.12. Rather, their complaints acknowledge that, "at all relevant times," they were NAPA employees who were credentialed to work in Inova facilities. Hoffman J.A. 202; Austin J.A. 146.

12

Considering all nine *Butler* factors together, we agree with the district court that Hoffman and Austin have not plausibly alleged Inova was their employer.[6] Even accepting the complaints' factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Inova did not have authority to hire and fire Plaintiffs, did not exercise day-to-day supervision over them, and was not responsible for their employment records. As CRNAs, Plaintiffs' duties were not akin to those of regular Inova employees. While Inova furnished equipment, facilities, and some necessary training, those facts do not distinguish employees from non-employees in the setting of a hospital or surgical center. And although Plaintiffs worked for years exclusively at Inova facilities, they did not subjectively intend to enter an employment relationship with Inova but instead knew that NAPA was their employer. Despite an opportunity to replead after guidance from the district court, Plaintiffs have not nudged their claims of joint employment "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotation marks omitted).

IV.

We turn next to Hoffman's claims against NAPA, which the district court dismissed for failure to exhaust administrative remedies. Before pursuing a lawsuit under Title VII or the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. 42 U.S.C. §§ 2000e-5(b), (f), 12117(a); *see Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022); *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

---

[6] At oral argument, Plaintiffs for the first time relied on *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973). That reliance is misplaced. *Sibley* presented materially different factual circumstances, and the court did not undertake the nine-factor joint employment analysis applicable in this Circuit. *See Butler*, 793 F.3d at 414.

"[R]equiring a party to file a charge with the EEOC ensures that the employer is put on notice of the alleged violations" and gives the EEOC "the first crack" at resolving employment discrimination disputes. *Sydnor*, 681 F.3d at 593 (internal quotation marks omitted). Accordingly, "[a] plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit," and "[t]he allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Walton*, 33 F.4th at 172 (internal quotation marks omitted). The VHRA imposes its own exhaustion requirements that similarly involve first filing a charge and ultimately receiving notice from the state agency of one's right to file a civil suit. *See* Va. Code §§ 2.2-3907(A), (B), 2.2-3908(A).

In her original complaint, Hoffman alleged that she had exhausted the relevant administrative procedures because (1) she filed a discrimination claim with the EEOC on July 13, 2022, which was cross-filed with the Virginia Office of Civil Rights (OCR), and (2) on November 21, 2023, the EEOC and the OCR issued right-to-sue notices to her. Hoffman's July 13 EEOC charge identifies Inova as the only employer who allegedly discriminated against her. It does not mention NAPA. Likewise, both right-to-sue notices were sent to Inova but not to NAPA.

After NAPA moved to dismiss the complaint for failure to exhaust, Hoffman asserted that she had submitted a letter to the EEOC on March 30, 2023, attempting to add a claim that NAPA also discriminated against her. In her letter, which Hoffman styled as an "Update and Amendment" to her original charge, Hoffman claimed that "NAPA engaged in discrimination against me along with the Inova Health System." Hoffman J.A.

14

154. Hoffman appended NAPA's contact information to her letter and uploaded the letter to the EEOC's online portal. But Hoffman's formal charge of discrimination was never amended, and NAPA did not receive notice of any charges against it before Hoffman filed suit.

The district court correctly ruled that Hoffman failed to administratively exhaust her claims again NAPA. Hoffman's EEOC charge of discrimination, which limits the scope of her federal claims, did not name NAPA. *See Walton*, 33 F.4th at 172. The letter Hoffman sent to the EEOC eight months after her initial charge did not result in an amended charge or notice to NAPA. As we reasoned in a similar case, "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999); *see also Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 385 (4th Cir. 2022) (relying on *Sloop* to reject plaintiff's claim that her discussion with an EEOC investigator expanded her EEOC charge).

Hoffman emphasizes that her letter to the EEOC was a conspicuous effort to amend her charge to add a discrimination claim against NAPA and that she used an appropriate channel for communicating with the agency.[7] Even so, we cannot read Hoffman's private

---

[7] Hoffman relies on *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002), where we held that the EEOC's delay in assigning a number to a plaintiff's charge and forwarding it to the employer and the state agency did not prevent it from qualifying

15

letter to the EEOC "as part of her formal discrimination charge without contravening [Title VII's] purposes" to put employers "on notice [and] encourag[e] conciliation." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see id.* ("In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency.").

Regarding her VHRA claim, Hoffman relies on the same letter to the EEOC, which she says would have been cross-filed with the OCR. That argument fails for the reasons we have explained. In a footnote in her reply brief, Hoffman also states that she "filed an updated Complaint Questionnaire form with OCR on October 31, 2022," citing to an unsigned and undated document. Hoffman Reply Br. 14 n.3. She offers nothing further about the import of this filing, thereby waiving any potential argument about this document multiple times over. *See Short v. Hartman*, 87 F.4th 593, 615 (4th Cir. 2023) ("'A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.'" (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)); *see also Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009) (finding that claims asserted in a single sentence in a footnote were waived on appeal).

---

as a valid charge to which the subsequent formal charge could relate back for timeliness purposes. *Edelman* is of limited relevance here, as it did not involve amending a formal charge or lack of notice to an employer.

V.

For the foregoing reasons, we affirm the district court's dismissal of Hoffman's and Austin's complaints in full.

*AFFIRMED*