**Paul A. MITCHELL, Plaintiff,**

v.

**NORTH CAROLINA DIVISION OF EMPLOYMENT SECURITY, and Wayne Community College, Defendants.**

**No. 5:14–CV–584–D.**

United States District Court, E.D. North Carolina, Western Division.

Signed Nov. 3, 2014.

Paul A. Mitchell, Goldsboro, NC, pro se.

## ORDER

JAMES C. DEVER III, Chief Judge.

On October 7, 2014, Paul A. Mitchell ("Mitchell" or "plaintiff"), appearing pro se, filed an application to proceed in forma pauperis [D.E. 1] and a verified complaint against defendants North Carolina Division of Employment Security and Wayne Community College ("WCC") [D.E. 1–1]. Mitchell seeks declaratory and injunctive relief. *See* Compl. [D.E. 1–1] 1, 20–21. As explained below, the court permits Mitchell to proceed in forma pauperis but dismisses the complaint and denies his request for injunctive relief.

## I.

Mitchell is a former instructor at WCC. Compl. 1. Mitchell has a different civil action pending in this court against the North Carolina Community College System, WCC, and various WCC officials alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and numerous state law claims arising from his employment and termination at WCC. *See* Amended Complaint, *Mitchell v. Bd. of Trs. of Wayne Cmty. Coll.*, 5:14–CV–231–D (E.D.N.C. June 5, 2014) [D.E. 6]. In addition, on September 9, 2014, this court denied Mitchell's attempt to remove a criminal action pending against him in Wayne

County Superior Court. *See* Order, *In re N.C. v. Mitchell*, No. 5:14–CR–156–D, 76 F.Supp.3d 618, 2014 WL 7399121 (E.D.N.C. Sept. 9, 2014) [D.E. 3]. The criminal action also relates to his former employment at WCC. *See id.*

In Mitchell's latest complaint, he has sued the North Carolina Division of Employment Security and WCC. *See* Compl. Mitchell alleges that WCC retaliated against him in violation of Title VII during his unemployment case at the North Carolina Division of Employment Security. *See* Compl. 11–14 (counts I and II). According to Mitchell, WCC retaliated against him by making "false statements" about him to the North Carolina Division of Employment Security in order to disqualify Mitchell from receiving unemployment benefits and to injure his reputation. *See id.* 11. Mitchell also alleges that the North Carolina Division of Employment Security retaliated against him in violation of Title VI of the Civil Rights Act of 1964 ("Title VI") when it denied his request to receive unemployment benefits. *See* Compl. 15–19 (counts HI and IV). Mitchell seeks declaratory and injunctive relief, to include: (1) an order directing the North Carolina Division of Employment Security to "release [his] withheld employment benefits of $7,350," including interest; (2) an order directing WCC "to reinstate Mitchell to his original position as Science Instructor with back pay"; and (3) an order directing WCC not to retaliate against Mitchell or engage in racial discrimination against Mitchell. *See id.* 20–21 (prayer for relief).

First, the court addresses Mitchell's latest Title VII claims against WCC. Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *See, e.g., Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir.2012);

*Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 300 (4th Cir.2009); *Chacko v. Patuxent Inst.,* 429 F.3d 505, 509–13 (4th Cir.2005); *Miles v. Dell, Inc.,* 429 F.3d 480, 491–92 (4th Cir.2005); *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132–33 (4th Cir.2002); *Sloop v. Mem'l Mission Hosp. Inc.,* 198 F.3d 147, 148–50 (4th Cir.1999); *Dennis v. Cnty. of Fairfax,* 55 F.3d 151, 156–57 (4th Cir.1995). If a plaintiff fails to exhaust administrative remedies with the EEOC, the court lacks subject-matter jurisdiction over the Title VII claim. *See, e.g., Jones,* 551 F.3d at 300.

Mitchell never filed a charge of discrimination with or obtained a resolution from the EEOC concerning his latest retaliation claims against WCC.[1] Thus, Mitchell has failed to exhaust his administrative remedies with the EEOC under Title VII. Accordingly, this court lacks subject-matter jurisdiction over his Title VII retaliation claims against WCC and dismisses those claims. *See id.*

Alternatively, even if Mitchell need not file an EEOC charge concerning WCC's alleged retaliation, Mitchell fails to state a claim upon which relief can be granted against WCC. *See* Fed.R.Civ.P. 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation omitted); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Coleman v. Md. Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir.2010), *aff'd,* —— U.S. ——, 132 S.Ct. 1327, 182 L.Ed.2d 296 (2012); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008). In evaluating a complaint, the court "accepts

all well-pled facts as true" but need not accept a complaint's "bare assertions devoid of further factual enhancement" nor a complaint's conclusions of law. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.,* 591 F.3d 250, 255 (4th Cir.2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

■ Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson v. BAC Home Loans Servicing, LP,* 867 F.Supp.2d 766, 776 (E.D.N.C. 2011); *see Giarratano,* 521 F.3d at 304 n. 5. "The 'special judicial solicitude' with which a district court should view ... pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir.1990). Every party—pro se or otherwise—must comply with the Federal Rules of Civil Procedure. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam).

■ Mitchell's complaint contains no direct evidence of retaliation. Instead, he relies on the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450

---

1. Mitchell filed an EEOC charge alleging race discrimination before filing case number 5:14–CV–231–D. *See* [D.E. 1–3] 19. Mitchell, however, filed that EEOC charge before the events giving rise to his current claims of retaliation concerning his unemployment benefits.

U.S. 248, 252–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 410 (4th Cir.2013); *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 218 (4th Cir.2007); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir.2001); *Holley v. N.C. Dep't of Admin.,* 846 F.Supp.2d 416, 441 (E.D.N.C. 2012). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took action against him that a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. *Balas,* 711 F.3d at 410; *Holland,* 487 F.3d at 218; *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543 (4th Cir.2003); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 133 S.Ct. 2517, 2524–33, 186 L.Ed.2d 503 (2013); *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 67–70, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). An adverse employment action includes "[a] discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland,* 487 F.3d at 219 (quotation omitted) (alteration in original); *see Burlington N. & Santa Fe Ry.,* 548 U.S. at 68–70, 126 S.Ct. 2405; *Balas,* 711 F.3d at 410.

■ Mitchell's Title VII retaliation claims against WCC fail because he has not plausibly alleged that WCC's participation in his unemployment case at the North Carolina Division of Employment Security constitutes a materially adverse action. As a matter of law, WCC's participation in Mitchell's unemployment case is not a materially adverse action. *See, e.g., Griffin v. S. Piedmont Cmty. College,* No. 3:10CV412, 2011 WL 3841562, at *7 (W.D.N.C. Aug. 30, 2011) (unpublished); *Yanke v. Mueller Die Cut Solutions, Inc.,* No. 3:03 CV 527, 2007 WL 437694, at *9 (W.D.N.C. Feb. 5, 2007) (unpublished). Moreover, statements that WCC employees or agents made in the unemployment case are privileged and do not constitute a materially adverse action. *Cf., e.g.,* N.C. Gen.Stat. § 96–4(x)(5); *Howard v. Food Lion, Inc.,* 232 F.Supp.2d 585, 598–99 (M.D.N.C.2002). Thus, even if the court has jurisdiction over Mitchell's Title VII retaliation claims against WCC, Mitchell has failed to state a claim upon which relief can be granted.

■ Next, the court addresses Mitchell's Title VI claims against the North Carolina Division of Employment Security. To the extent that Mitchell asks this court to review the merits of the decision denying his request for unemployment benefits compensation and to award him unemployment benefits, the court lacks subject-matter jurisdiction over such a request. *See, e.g., D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462, 482–88, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Rodriguez v. Doe,* 549 Fed.Appx. 141, 144 (4th Cir.2013) (per curiam) (unpublished); *Adkins v. Rumsfeld,* 464 F.3d 456, 463–64 (4th Cir.2006). Instead, Mitchell must appeal the decision denying his request for unemployment benefits to the North Carolina Superior Court. *See* N.C. Gen.Stat. § 96–15(h), (i).

■ Alternatively, even if the court has subject-matter jurisdiction over Mitchell's Title VI claims against the North Carolina Division of Employment Security, Mitchell has failed to state a claim upon which relief can be granted. Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI includes an

implied right of action for an individual alleging intentional race discrimination. *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Barnes v. Gorman*, 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002); *Alexander v. Sandoval*, 532 U.S. 275, 279–81, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Title VI also includes an implied right of action for an individual alleging retaliation against a person because that person complained of race discrimination. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 177–78, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005) (construing Title DC to prohibit retaliation against a person because that person complained of sex discrimination, and discussing similarity of statutory text in Title VI and Title DC); *Peters v. Jenney*, 327 F.3d 307, 316–21 (4th Cir.2003) (construing Title VI).

▮ In *Peters*, the Fourth Circuit described the elements of a Title VI retaliation claim as follows:

> To make a claim for Title VI retaliation, [a plaintiff] must show (1) that [he] engaged in protected activity; (2) that [defendant] took a material adverse employment action against [him;] and (3) that a causal connection existed between the protected activity and the adverse action.

*Peters*, 327 F.3d at 320. To prove "protected activity," a plaintiff must prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring. *Id.* The protected-activity inquiry focuses on whether a plaintiff (1) "subjectively (that is, in good faith), believed" that defendant engaged in a practice that violated Title VI, and (2)

whether the belief was "objectively reasonable" in light of facts. *Id.* at 321 (quotation and emphasis omitted). To prove a Title VI retaliation claim, a plaintiff can rely on direct evidence of retaliation or the *McDonnell Douglas* burden-shifting scheme. *See id.* at 320 n. 15.

▮ The broad prohibition against race discrimination in 42 U.S.C. § 2000d is qualified by 42 U.S.C. § 2000d–3, which states:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d–3. *See Trageser v. Libbie Rehab. Ctr., Inc.*, 590 F.2d 87, 88 (4th Cir.1978), *abrogated on other grounds by Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). As the Fourth Circuit explained in *Trageser*:

> Although [42 U.S.C. § 2000d–3] expressly curtails the authority of federal departments and agencies, it also restricts private suits. Thus, because of [42 U.S.C. § 2000d–3], Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid.

*Trageser*, 590 F.2d at 89.

▮ In his complaint, Mitchell alleges that "the Division of Employment Security receives federal funds." Compl. 3.[2] Under

---

**2.** The court assumes without deciding that the

North Carolina Division of Employment Secu-

*Iqbal* and Title VI, Mitchell has not plausibly alleged that providing employment is a primary objective of the federal funds that North Carolina Division of Employment Security allegedly receives. *See, e.g., Ahern v. Bd. of Educ. of Chi.,* 133 F.3d 975, 977 (7th Cir.1998); *Ingram v. Morgan St. Univ.,* 74 F.3d 1232, 1996 WL 13861, at *1 (4th Cir.1996) (per curiam) (unpublished table decision); *Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1531–32 (10th Cir.1995); *Temengil v. Trust Territory of the Pac. Islands,* 881 F.2d 647, 653 (9th Cir.1989); *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport,* 647 F.2d 256, 276 (2d Cir.1981); *Trageser,* 590 F.2d at 89; *Mansel v. Am.'s Second Harvest,* No. 6:08–0003–RBH, 2008 WL 4200296, at *3, *5–8 (D.S.C. Sept. 5, 2008) (unpublished); *Johnson v. Cmty. Coll. of Allegheny Cnty.,* 566 F.Supp.2d 405, 457–59 (W.D.Pa.2008); *Johnson v. County of Nassau,* 411 F.Supp.2d 171, 175–76 (E.D.N.Y.2006); *Gilmore v. Univ. of Rochester,* 410 F.Supp.2d 127, 132 (W.D.N.Y.2006); *Luallen v. Guilford Health Care Ctr.,* No. 1:02CV738, 2003 WL 23094916, at *10–11 (M.D.N.C. Dec. 18, 2003) (unpublished); *Barbero v. Catawba Valley Legal Servs., Inc.,* No. 4:94CV115, 1995 WL 757738, at *3 (W.D.N.C. Sept. 21, 1995) (unpublished).

Reviewing the purpose and structure of the North Carolina Division of Employment Security in light of Mitchell's attempt to sue it under Title VI for retaliation highlights the frivolity of Mitchell's Title VI claims against this defendant. The North Carolina General Assembly enacted North Carolina's Employment Security Law in order to provide unemployment benefits to persons unemployed through no fault of their own. N.C. Gen.Stat. § 96–2; *see Binney v. Banner Therapy Prods., Inc.,* 362 N.C. 310, 315–19, 661 S.E.2d 717, 720–22 (2008). As part of the Employment Security Law, the General Assembly created the North Carolina Division of Employment Security. *See* N.C. Gen.Stat. § 96–3. The General Assembly also created an elaborate, independent hearing process for those seeking unemployment benefits. *See id.* § 96–15. As part of that independent hearing process, a claimant seeking unemployment benefits first may obtain review by an adjudicator, then may appeal an adverse decision to a hearing officer, then may appeal an adverse decision to the Board of Review, and finally may obtain judicial review of an adverse Board of Review decision in the North Carolina Superior Court. *See id.*

In Mitchell's quest for unemployment benefits, Mitchell participated in this independent hearing process, and the North Carolina Division of Employment Security denied his request for unemployment benefits. *See* [D.E. 1–4] 1–10. In his first Title VI retaliation claim against the North Carolina Division of Employment Security, Mitchell contends that the Division retaliated against him by finding that he engaged in misconduct at work at WCC under N.C. Gen.Stat. § 96–14.6(b) and denying him unemployment benefits. *See* Compl. 15–18 (count III). In his second Title VI retaliation claim, Mitchell contends that the North Carolina Division of Employment Security retaliated against him by finding that Mitchell was not discharged for filing an EEOC charge concerning his employment with WCC or for complaining about alleged racial discrimination or retaliation by WCC. *See id.* 18–19 (count IV). Mitchell then alleges that the North Carolina Division of Employ-

---

rity qualifies as a "program or activity" within the meaning of 42 U.S.C. § 2000d and

§ 2000d–4a.

ment Security "intended to cause irreparable harm to Mitchell's Title VII lawsuit [against WCC.]" *Id.* 19.

■■■ As noted, Mitchell's Title VI claims fail because he has not plausibly alleged that providing employment is a primary objective of the federal funding that the North Carolina Division of Employment Security receives. Obviously, the primary objective of the federal funding that the North Carolina Division of Employment Security receives is to assist the unemployed with unemployment benefits. Moreover, whatever ruling the North Carolina Division of Employment Security made concerning Mitchell's request for unemployment benefits under North Carolina law does not necessarily have preclusive effect in Mitchell's pending Title VII lawsuit against WCC. *Cf. e.g., Pettis v. House of Ruth Md., Inc.,* No. 04–2443, 2006 WL 6507699, at *1 (4th Cir. Mar. 6, 2006) (per curiam) (unpublished); *Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 360–63 (4th Cir.1985), *abrogated on other grounds by Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Furthermore, the Title VI claims fail because the rulings of the North Carolina Division of Employment Security do not constitute materially adverse employment action. *See Peters,* 327 F.3d at 320; *accord Burlington N. & Santa Fe Ry.,* 548 U.S. at 59–63, 126 S.Ct. 2405; *Griffin,* 2011 WL 3841562, at *7; *Yanke,* 2007 WL 437694, at *9.

■■■ Finally, because the court is dismissing the complaint against WCC and the North Carolina Division of Employment Security, the court also denies Mitchell's request for a temporary restraining order and a preliminary injunction. Mitchell has failed to meet his burden of proof to obtain such extraordinary relief. *See, e.g., Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365,

172 L.Ed.2d 249 (2008); *Centro Tepeyac v. Montgomery Cnty.,* 722 F.3d 184, 188 (4th Cir.2013) (en banc); *Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346 (4th Cir.2009), *vacated on other grounds,* 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010), *reissued in relevant part,* 607 F.3d 355 (4th Cir.2010) (per curiam).

## II.

In sum, the court GRANTS plaintiff's request to proceed in forma pauperis [D.E. 1] and PERMITS the complaint [D.E. 1–1] to be filed. The court DISMISSES the complaint against defendant Wayne Community College and against defendant North Carolina Employment Security Division. The court also DENIES Mitchell's request for a temporary restraining order and a preliminary injunction. Given certain overlapping issues, the clerk shall serve a copy of this order on counsel of record in case number 5:14–CV–231–D.

