**PUBLISHED**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**No. 21-1041**

CATHY WALTON,

       Plaintiff – Appellant,

v.

THOMAS HARKER,

       Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Richard Mark Gergel, District Judge. (2:18-cv-01568-RMG)

Argued: March 8, 2022                        Decided: April 28, 2022

Before AGEE and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion. Judge Agee wrote the opinion in which Judge Richardson and Senior Judge Floyd joined.

**ARGUED:** Timothy O'Neill Lewis, GIBBS & HOLMES, Charleston, South Carolina, for Appellant. William Hammond Jordan, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Allan R. Holmes, Rebecca J. Wolfe, GIBBS & HOLMES, Charleston, South Carolina, for Appellant. M. Rhett DeHart, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

AGEE, Circuit Judge:

Cathy Walton ("Walton") appeals from the district court's decision granting summary judgment to Acting Secretary of the Navy Thomas Harker[1] (the "Navy") on her employment retaliation claims under Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). The district court awarded judgment after concluding that Walton failed to exhaust certain claims because they were not raised in her Equal Employment Opportunity Commission ("EEOC") charge. It also rejected her remaining retaliation claims, finding no direct evidence of animus. The court further determined that Walton was unable to establish a causal link between her previous filing of EEOC charges and an alleged adverse employment decision made six years later. For the following reasons, we affirm the district court's judgment on each ground, with each serving as an independent basis for affirmance.

I.

A.

Walton is an African American woman, who has been employed by the federal government since 1979. Beginning in 1995, she worked at the Space and Naval Warfare Systems Center ("SPAWAR").[2] In 1999, Walton was promoted to the position of

---

[1] Thomas Harker is the Acting Secretary of the Navy. During the litigation, he was substituted as a defendant for former Secretary Kenneth J. Braithwaite. *See* Fed. R. App. P. 43(c)(2).

[2] The facility is now known as the Naval Information Warfare Center—Charleston.

Administrative Specialist in the Contracts Administration section, in which she performed the functions of a contracting officer. That was Walton's last promotion, and she remained in that position until her recent retirement.

B.

Walton claims she was laterally "reassigned against her will to a lower level and undesirable position in [Task Orders, within] the Contracts Division" in 2013. J.A. 11 ¶ 16. Two years later, she returned to her previous post of Administrative Specialist.

Walton's move to the Task Orders section was put into motion when SPAWAR implemented a reorganization within its Contracts Division. Changes to the governing statute for contract procurement required the Department of Defense and the Navy to shift from single-award contracts to multiple-award contracts.[3] This change increased the amount of work in the Task Orders section and reduced the quantity of work in the Contracts Administration section. SPAWAR addressed the new statutory requirements by moving employees to the Task Orders section, which needed individuals who had experience with source selection to effectuate the pivot to multiple-award contracts. Walton met that crucial qualification because she had significant source-selection experience.

In response to the statutorily mandated shift to multiple award contracts, Walton and six other employees were reassigned to the Task Orders section in January 2013. Of

_____

[3] A single award contract is given to one contractor. A multiple award contract is awarded to several contractors for a specified amount of time so that when individual requirements arise the contract holders compete for each requirement.

those, four were Caucasian, two were African American, and one was Asian. Walton was born in 1953. The other six reassigned employees were born in 1958, 1960, 1963, 1971, 1981, and 1982.

Throughout the litigation, Walton has characterized this position change as a "demotion." *See, e.g.*, J.A. 9 ¶ 10 ("In 2013, SPAWAR demoted plaintiff to a position that, while equal in pay, prevented her from advancing in her career."); J.A. 11 ¶¶ 16, 18. She concedes her salary and benefits were unaffected.

Other witnesses contradicted Walton's opinion, describing the reassignment as a lateral transfer with increased opportunity for advancement. William Paggi, the Contracts Competency Lead and Walton's fourth-level supervisor, described her Task Orders post as "a higher position in terms of promotion potential" because the work was "more complex." J.A. 153. Audrey Orvin, Walton's second-level supervisor, described multiple-award contract work as "complicated and [it] requires a higher skill set in order to effectively process these procurement actions with the required levels of quality and thoroughness." J.A. 172. Orvin also stated: "Because [the] contract competency is limited with respect to . . . depth of experience in these types of tasks, [the Navy] needed to properly align the valuable senior level expertise to the various teams/branches that would be processing these actions." *Id.*

Although Walton personally believes her transfer to the Task Orders section diminished her promotion potential in a general sense, at *no* point during this litigation has she identified *any* specific promotional opportunities for which she was overlooked either during her limited tenure in the Task Orders section or since then.

4

C.

Walton alleges the Navy retaliated against her because she filed internal EEOC charges in 2005 and 2007, both of which alleged violations of Title VII. Walton's superiors, Paggi and Orvin, were involved in the 2005 EEOC charge, which resulted in a finding that Walton had failed to prove discrimination. Walton's third-level supervisor, Donna Murphy, was involved in her 2007 complaint, which resulted in a negotiated settlement agreement.

Several years after filing these EEOC charges, one of Walton's co-workers, Nina Burgsteiner, attended a meeting in 2012 with Donna Johnson, Walton's first-level supervisor, and Orvin. During that meeting Orvin asked Johnson why she had not placed Walton on a contracting process improvement team ("CPI Team"), which worked on developing agency policies and procedures. Burgsteiner testified at her deposition that Johnson responded: "I basically don't want anything to do with Cathy. I am not going to talk to Cathy unless I have to. Because I'm afraid she will file a lawsuit, another EEO[C] lawsuit[.]" J.A. 2771. Burgsteiner also stated in an affidavit that Johnson's comment was "not an isolated incident." J.A. 242.

Walton filed another EEOC charge in 2013, which serves as the basis for this lawsuit (the "2013 EEOC Charge"). That charge contained four claims. The first one raised issues regarding Walton's 2012 performance assessment. The second alleged: "Assignment of Duties – [In] April 2013, I was reassigned from the [Contracts] Administration Branch to the [Task] Orders Branch of contracts. It is my belief that this reassignment was based on retaliation as well as age." J.A. 3. The third claim related to Walton's salary, which she

5

believed was below what her counterparts were being paid. And the fourth alleged she was forced to endure a hostile work environment. The EEOC ruled against Walton on all four claims.

D.

Walton filed the operative Amended Complaint in 2018, asserting claims for race discrimination, age discrimination, and retaliation in violation of Title VII and the ADEA. Walton's lawsuit challenged three employment actions: (1) her 2012 performance assessment; (2) her 2013 reassignment from the Contract Administrative section to the Task Orders section of the Contracts Division; and (3) her compensation.

The Navy moved for summary judgment. Walton timely responded, attempting to raise for the first time claims based on her exclusion from the CPI Team and denial of unspecified promotions. Walton also withdrew her claims related to the 2012 performance assessment and her salary. The Navy, in its reply brief, argued that Walton was not entitled to pursue claims that were not brought before the EEOC and reiterated its contention that summary judgment was warranted on her remaining claims. Thus, all that remained were Walton's Title VII and ADEA claims based upon the 2013 realignment. The magistrate judge filed a Report and Recommendation that the district court grant the Navy's motion in full. Walton filed timely objections only with respect to her retaliation claims,[4] to which

---

[4] Walton thus waived her Title VII and ADEA discrimination claims. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315–16 (4th Cir. 2005).

the Navy responded. The district court entered an order overruling her objections and granting the Navy's motion for summary judgment.

Walton filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

II.

The Court "review[s] a summary judgment de novo, applying the same standard that the district court was required to apply." *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when, "after adequate time for discovery and upon motion, . . . a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

III.

Title VII applies to federal-sector employers and forbids such an employer from taking adverse action against an employee because that employee either has "opposed any

practice made an unlawful employment practice" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). This anti-retaliation provision is meant to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

Similarly, the federal-sector provision of the ADEA prohibits retaliation against an employee who complains of age discrimination. *See* 29 U.S.C. § 633a(a); *Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008) (holding that a federal employee can bring a claim for age discrimination under the ADEA). Employees may prove that their employer retaliated against them for engaging in protected activity through one of two ways: (1) by direct evidence of retaliatory animus; or (2) through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

With respect to the only remaining claim in this case, we find the district court correctly awarded summary judgment to the Navy because Walton's arguments are without merit for four distinct and independent reasons. First, Walton is not permitted to use her assertions about exclusion from the CPI Team and the Navy's failure to promote her as a foundation for alleged retaliation because she declined to exhaust her administrative remedies with respect to those claims and, as a result, they are procedurally barred. Second, even if Walton had exhausted her administrative remedies for those claims, she failed to plead them in her Amended Complaint. Third, Walton provided no direct evidence of

8

retaliation. Fourth, she cannot meet her burden to show causation under the *McDonnell Douglas* framework, and she provides absolutely no evidence of pretext that would overcome the Navy's legitimate, non-discriminatory reason for the 2013 lateral reassignment. Each of these holdings provides an independent basis for this Court to affirm the reasoned judgment of the district court.

A.

As a threshold matter, Walton is procedurally barred from pursuing her claims of exclusion from the CPI Team and the Navy's alleged failure to promote her because she did not raise them at the administrative level.

It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d). "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (holding the scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents). "[F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (holding that the plaintiff had failed to exhaust his administrative remedies where his EEOC charge alleged three specific instances of harassment by a supervisor and his federal complaint alleged long-term

9

harassment by colleagues). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit." *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 506) (internal quotation marks omitted).

If the discrimination claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko*, 429 F.3d at 509 (internal quotation marks and citation omitted). "A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.*

Walton's new assertions that she was excluded from the CPI Team and denied unspecified promotions were not raised as part of her 2013 EEOC Charge, nor did they surface as adverse actions during the EEOC investigation. Rather, the sole issue accepted by the EEOC for investigation that remained before the district court was whether Walton was retaliated against when she was "reassigned from the Administrative Branch to the [Task] Orders Branch of the Contracts Competency." J.A. 26; J.A. 370. There is no mention of a CPI Team issue in any of the EEOC investigative reports or appeal documents. Oral Argument at 5:41-5:53, *Walton v. Harker* (No. 21-1041) (4th Cir. March 8, 2022) (hereinafter "Oral Argument"), https://www.ca4.uscourts.gov/OAarchive/mp3/21-1041-20220308.mp3 (Walton's attorney conceding that there is no mention of exclusion from the CPI Team in the EEOC documents). There are only a few fleeting references to

10

advancement or promotion in the administrative record, all of which are generic. And none articulate anything more than Walton's vague, unsupported personal belief that she was less promotable due to the 2013 realignment. Walton did not, for instance, identify any promotion to which she applied and was denied. Nor did she provide any comparators that were given promotions for which she was more qualified. Her administrative case before the EEOC focused solely on her view that the 2013 realignment *felt* like a demotion, not that it established a failure to promote. Being excluded from the CPI Team and being denied specific promotions could potentially be discrete adverse actions on which Walton could have based her claims. But she elected not to do so. Her belated attempt to graft these claims onto the sole remaining ground in her 2013 EEOC Charge does not comport with the raise-or-waive *sine qua non* of governing law. *See, e.g.*, *Chacko*, 429 F.3d at 509.

Furthermore, neither of Walton's new, distinct assertions is reasonably related to the claims raised in the EEOC charge. She argued before the EEOC and the district court that the 2013 reassignment itself was the adverse employment action. J.A. 11 ¶ 18 ("In retaliation for plaintiff's EEO[C] complaints, Mr. Paggi reassigned Plaintiff to an undesirable position."); J.A. 26–28 (formal EEOC complaint). Any statements Walton made during the EEOC investigation or the district court proceedings that related to promotions (she made none about the CPI Team) were articulated only in the context of her position that the 2013 reassignment itself was the retaliatory act.[5]

---

[5] Aside from three nonspecific statements about promotion in Walton's Amended Complaint, J.A. 9–11 ¶¶ 11, 16, 18, the entire record contains only one unpled, vague, passing reference to an actual application Walton submitted for an unspecified promotion (Continued)

Walton cannot now in hindsight reframe her claims that the EEOC considered about the 2013 realignment "demotion" to now become new claims about the CPI Team and a subsequent failure to promote. Because the EEOC had no basis for investigating these claims, it never considered them. And the Navy was not put on notice that those were the claims against which it must defend itself. Similarly, Walton fails to point to anything in the administrative record that the EEOC should have pursued as "reasonably related" to the Amended Complaint. *Stewart*, 912 F.3d at 705. As Walton did not raise the CPI Team and failure-to-promote claims administratively, the record is devoid of any facts, much less the essential ones, that would be crucial to considering these discrete allegations, such as the details of promotional opportunities that were purportedly denied to Walton and whether she applied and was qualified for those posts.

Even *Sydnor v. Fairfax Cnty.*, 681 F.3d 591 (4th Cir. 2012), the case on which Walton heavily relies, recognized that "requiring a party to file [an administrative charge] ensures that the employer is put on notice of the alleged violations" and "[t]he goals of providing notice and an opportunity for an agency response would be undermined . . . if a plaintiff could raise claims in litigation that did not appear in [her] EEOC charge." *Id.* at 593 (internal quotation marks and citation omitted). Allowing Walton to pursue these non-exhausted claims now creates the precise problem this Court sought to curtail in *Sydnor*.

---

in 2016, J.A. 258. By then, she had already returned to her previous job as an Administrative Specialist in the Contracts Administration section. Thus, even taking that undetailed assertion as true, it only serves to undercut Walton's view that she had less promotion potential in the Task Orders section than she did in her position in the Contracts Administration section.

Contrary to Walton's argument that *Sydnor* is analogous to this case, the facts and procedural history of *Sydnor* do not bear much resemblance to those of the case at bar. In *Sydnor* the plaintiff filed an administrative charge asserting her employer had discriminated against her because her manager had denied her requested reasonable accommodation for "lighter duty work." *Id.* at 592. While her federal suit was pending, she also requested working with assistance of a wheelchair. *Id.* at 593. The district court dismissed the case for the plaintiff's failure to exhaust. This Court reversed, holding the "variation in the[] proposed accommodations does not mean that [the plaintiff] failed to exhaust her administrative remedies." *Id.* at 595. Put differently, the *Sydnor* plaintiff did not change the type of discrimination alleged, just the type of accommodation, or relief, she requested. *Id.* at 596 (observing that despite the difference in requested accommodation, it was evident that "Sydnor faced the same difficulties in walking after her foot surgery and needed some form of accommodation" and use of a wheelchair was "one logical accommodation for this specific disability"). Walton, by contrast, wishes to pursue for the first-time during this litigation new claims that are not logically related to the 2013 job realignment "demotion," the sole remaining claim that she presented to the EEOC. Failure-to-promote is a distinct type of retaliation claim that we have said has to be explicitly raised and investigated. *See Chacko*, 429 F.3d at 509 ("A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits."); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (observing that "termination, failure to promote, denial of transfer, or refusal of hire" are "[d]iscrete acts . . .

13

of discrimination" which "Each retaliatory adverse employment decision constitute[ing] a separate actionable 'unlawful employment practice'"). Otherwise, the risk is that broad terms could encompass "a limitless number of other factual worlds" such that it renders the exhaustion requirement "a nullity." *Chacko*, 429 F.3d at 512–13.

Walton began to pursue claims for failure-to-promote and exclusion from the CPI Team for the first time in response to the Navy's summary judgment motion. The Navy in its subsequent reply brief pointed out that she had failed to exhaust her administrative remedies. Walton is not entitled to pursue new claims for the first time long after the administrative process concluded.

The district court correctly held that her CPI Team and failure to promote claims were not properly exhausted. *See, e.g., id.* at 513 ("We have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit."); *Bryant*, 288 F.3d at 132–33 (affirming dismissal of plaintiff's claim because its scope exceeded that of his administrative charge); *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("We conclude that [plaintiff] failed to exhaust her administrative remedies before the EEOC, and therefore dismiss her Title VII retaliation claim."). Accordingly, Walton is procedurally barred from pursuing those allegations as adverse actions in her retaliation case.

Lastly, we note the district court's statement in its Order and Opinion that a failure to exhaust implicates subject matter jurisdiction. J.A. 371 (stating the court did "not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge"). Although exhaustion is imperative, it is not jurisdictional. A little over a year

14

before the district court's decision in this case, the Supreme Court held that Title VII's exhaustion requirement is a non-jurisdictional "processing rule, albeit a mandatory one" that must be enforced when properly raised. *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019); *see also United States v. Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021) (holding that the district court erred by ruling on administrative exhaustion sua sponte). Neither party cited *Fort Bend* or *Muhammad* in the district court, in their appellate briefs, or meaningfully argued in favor of applying those cases at oral argument, perhaps because there is no question that the Navy preserved its failure-to-exhaust argument. The Navy had no reason to raise the exhaustion objection at the outset of the litigation because Walton did not assert her CPI and non-promotion claims until her response to the Navy's summary judgment motion. At that point, the Navy promptly and properly raised the issue. Walton has not suggested otherwise, and thus she has waived any possible argument that the Navy failed to do so. *See Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir. 2002) ("[T]his Court normally views contentions not raised in an opening brief to be waived.").

## B.

Even if Walton had administratively exhausted her CPI Team and failure-to-promote claims, we would reach the same result because she failed to plead them in her Amended Complaint. It is axiomatic that a plaintiff's complaint must include sufficient facts demonstrating a plausible claim for relief. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Claims that are entirely omitted from the pleadings or mentioned only as speculative, bald accusations, without any supporting factual

15

allegations, will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that allegations of discriminatory conduct that are conclusory "are not entitled to the assumption of truth"); *see also, e.g.*, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) ("[A]lthough Coleman's complaint conclusorily alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation.").

Plaintiffs cannot proffer untimely issues absent from their initial pleadings to avoid summary judgment or to pursue an appeal. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518, 529 n.5 (4th Cir. 2017) (declining to consider an argument that the plaintiff failed to raise until its motion to reconsider an adverse ruling at summary judgment); *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 753–54 (4th Cir. 2016) (same); *Holland v. Big River Mins. Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the district court will not be addressed on appeal.").

Walton's Amended Complaint never mentions her purported exclusion from the CPI Team, and she concedes it "wasn't pled." Oral Argument at 2:39-3:51.

In order to properly plead a failure-to-promote claim under Title VII or the ADEA, a plaintiff must allege specific facts establishing four elements that could plausibly meet the satisfaction of the factfinder. To bring a failure-to-promote claim, a plaintiff must establish: "(1) she is a member of a protected group, (2) there was a specific position for

16

which she applied, (3) she was qualified for that position, and (4) [her employer] rejected her application under circumstances that give rise to an inference" of liability. *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 & n.5 (4th Cir. 2004); *Evans v. Technologies Applications & Serv.*, 80 F.3d 954, 959-64 (4th Cir. 1996) (reciting elements of a failure-to-promote claim in a case brought under Title VII and the ADEA). Walton's submissions fail to allege any of these four crucial elements. Instead, her Amended Complaint mentions promotion in the most conclusory fashion possible, asserting only Walton's vague speculation that "the possibility of promotion from the lower level contracts position is all but erased." J.A. 11 ¶ 16. The remainder of the Amended Complaint provides no additional allegations that, for instance, specify any promotion for which she applied and was denied, proffer any comparators that were given promotions for which she was more qualified, articulate the qualifications for the position and why she met them, or identify the decision maker for such a promotion. Perhaps recognizing these shortcomings, Walton admits she did not claim "separate distinct . . . discrete acts of not being promoted." Oral Argument at 13:15–13:23.

The Amended Complaint fails, on its face, to plead the necessary and basic elements of a failure-to-promote claim. If Walton wished to bring claims based on her exclusion from the CPI Team and the Navy's failure to promote her, she had to include them in her Amended Complaint. She cannot pursue claims that she failed to plead and only raised for the first time in response to a motion for summary judgment. *See Singleton*, 428 U.S. at 120.

Walton's failure to plead the claims she presents on appeal are a separate and independent ground for affirming the district court's judgment.

## C.

In granting the Navy's motion for summary judgment, the district court also correctly determined that Walton's remaining retaliation claim was unsustainable because there is no direct evidence of retaliation as part of her lateral realignment in 2013.

Direct evidence "is evidence which, if believed, would prove the existence of a fact without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (cleaned up), *rev'd on other grounds*, 517 U.S. 308 (1996). It is evidence of conduct or statements that reflect the alleged discriminatory attitude and that bear directly on the contested employment decision. *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982)

Walton proffers as direct evidence Johnson's comment that she would not put Walton on a CPI Team and Burgsteiner's statement that Johnson's comment was "not an isolated incident." J.A. 242. Walton contends these two statements constitute direct evidence of retaliatory animus resulting in a decision not to include her on the CPI Team. Even if one could characterize Johnson's comment as part of an unidentified pattern to limit Walton's promotability—an untenable stretch of logic—her EEOC charge and subsequent Amended Complaint did not include a failure-to-promote claim or anything related to the CPI Team. No matter how liberally one construes these comments, they have no nexus to the 2013 realignment, which is the only remaining contested employment decision.

18

Just as importantly, Johnson had no role in the 2005 or 2007 EEOC claims. Nor was she involved in any identifiable promotion. Walton simply offers no evidence to even remotely establish a nexus to any existing claim in this case. Indeed, she concedes Johnson was not the decisionmaker with respect to the 2013 realignment. Oral Argument at 15:30–16:03 ("On the moving to a different part of the contract administration, she was not what I would call a decision maker under the law."). Accordingly, the district court did not err in holding that Walton failed to establish her retaliation claim through direct evidence.

As with the foregoing reasons, the absence of direct evidence is another independent basis upon which to affirm the district court.

D.

Because Walton presented no direct evidence that the 2013 realignment was retaliatory, the district court correctly proceeded to the *McDonnell Douglas* burden-shifting framework. *Diamond*, 416 F.3d at 318 (applying burden-shifting framework to Title VII claim); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (applying burden-shifting framework to ADEA claim). Under this approach, an employee must first establish a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. To do so, the employee must demonstrate: "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

The Navy does not dispute that there is a question of fact regarding the first two elements. It argues Walton has failed to demonstrate the third element of her prima facie

19

case, i.e. that there is a causal connection between her filing EEOC charges in 2005 and 2007 and her 2013 job realignment.

Prior to bringing the 2013 EEOC Charge that resulted in this litigation, Walton's most recent administrative charge was filed in 2007. She concedes that the expanse of time from 2007 to 2013 does not create an inference of causation based on temporal proximity between the protected activity and the adverse employment action. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (explaining that a lapse of three years between the protected activity and the adverse employment action negated the inference of causation). Still, she would have us rely on *Lettieri v. Equant Inc.*, which held "[i]n cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." 478 F.3d 640, 650 (4th Cir. 2007) (internal quotation marks and citation omitted). Evidence of "recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Id.*; *see also id.* at 650–51 (finding ongoing animus where significant job responsibilities, supervisory responsibilities, and the ability to meet with clients were taken away from the plaintiff during the seven months between when she made her discrimination report and when her employment was terminated).

*Lettieri's* facts do not resemble this case. The pattern of animus there was severe and took place over a truncated period of months. Here, Walton points to only one alleged comment over six years by a supervisor that did not relate in any way to her 2013 job reassignment. Johnson's isolated statement about not wanting to include Walton on the CPI

20

Team does not amount to evidence of "recurring retaliatory animus," *id.* at 650, sufficient to create a causal link between Walton's 2005 and 2007 EEOC charges and 2013 employment action. As noted, Walton concedes Johnson was not even the decision maker with respect to the 2013 realignment. And her remaining contention that Johnson's comment was "not an isolated incident," J.A. 242, is unsupported by any record evidence demonstrating recurring animus. Thus, Johnson's lone statement cannot advance Walton's efforts to meet her burden to show causation. The analysis can conclude here.

But, even assuming that she could establish a prima facie case for employment retaliation, under *McDonnell Douglas* the burden would then shift to the Navy to proffer a legitimate, non-discriminatory reason for its decision. The record contains ample evidence to support the Navy's decision to reassign Walton in 2013. SPAWAR took the same action for multiple employees, within and outside of Walton's protected classes (age and race) from the Contracts Administration section to the Task Orders section to address the statutorily mandated shift from single- to multi-award contracts. Following the *McDonnell Douglas* framework, the burden would then shift back to Walton to show that the Navy's reason was pretextual. She has presented no such evidence. In fact, she does not even argue that the Navy's decision was pretextual.

Thus, for each of these independently sufficient reasons, the district court did not err in granting summary judgment for the Navy.

## IV.

For the reasons discussed above, the judgment of the district court is

21

*AFFIRMED.*