**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1081**

CLAY O'NEAL FITZGERALD

        Plaintiff - Appellant

v.

BOTETOURT COUNTY, VIRGINIA

        Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia at Roanoke.  Robert S. Ballou, District Judge.  (7:19−cv−00825−RSB)

Argued:  September 25, 2024                    Decided:  October 25, 2024

Before WILKINSON, RICHARDSON, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Richardson and Judge Rushing joined.

**ARGUED:**  Thomas Eugene Strelka, VIRGINIA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.  Jim H. Guynn, Jr., GUYNN WADDELL, P.C., Salem, Virginia, for Appellee.  **ON BRIEF:**  L. Leigh R. Strelka, N. Winston West, IV, Brittany M. Haddox, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.  Travis S. Andrews, GUYNN WADDELL CARROLL & LOCKABY, P.C., Salem, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Plaintiff-appellant Clay O'Neal Fitzgerald alleges that his former employer, Botetourt County, Virginia, terminated him in retaliation for his complaints about age discrimination. The district court granted Botetourt County's motion for summary judgment, finding that Fitzgerald failed to produce sufficient evidence under the *McDonnell Douglas* framework to show that the County's proffered justification for terminating him was pretextual. Because we agree that no reasonable jury could conclude that the County's legitimate non-retaliatory reason for Fitzgerald's termination was mere pretext, we affirm.

## I.

### A.

Fitzgerald was hired by Botetourt County as a firefighter and EMT in 2007. He was forty-seven years old. Fitzgerald became a logistics technician around 2010 and later received two notable promotions, first to lieutenant in 2016 and then to battalion chief in 2017. Both promotions came with a pay raise and increased supervisory responsibilities.

Despite these professional accomplishments, Fitzgerald felt that he was treated unfavorably due to his age. Sometime between 2010 and 2012, Fitzgerald made informal complaints about being denied opportunities to "ride the seat," meaning to serve as the officer on a fire engine. S.J.A. 124. He believed he was being passed over in favor of younger employees for this important step on the path to advancement.

In 2014, Fitzgerald brought his age discrimination concerns to the county administrator, Kathleen Guzi. His 2014 complaint focused on interactions with Jason

Ferguson and Andrew Moore, to whom Fitzgerald reported for EMS and training matters. Fitzgerald asserted that Ferguson and Moore made inappropriate comments about his age and deliberately relegated him to an inconsistent work schedule. Guzi met with Fitzgerald, battalion chief David Firestone, and human resources director Mary Blackburn to discuss Fitzgerald's concerns. No other action was taken on Fitzgerald's complaint.

Between 2014 and 2017, Botetourt County's fire and emergency services department experienced a shakeup in leadership. In January 2016, the County hired Gary Larrowe as the new county administrator. That same year, then-fire chief Jeff Beckner promoted Fitzgerald to lieutenant. In May 2017, Larrowe hired Matthew Britt to replace Beckner as fire chief and promoted Fitzgerald to battalion chief.

Unfortunately, neither the personnel changes nor his promotions resolved Fitzgerald's concerns about age discrimination. In July 2017, Fitzgerald complained to Larrowe about "ongoing issues" with Ferguson. J.A. 103. Larrowe and Blackburn met with Fitzgerald but took no further action. According to Fitzgerald, the discriminatory treatment only worsened after this complaint. In August 2017, Britt reprimanded Fitzgerald for personally deploying County equipment during a manhunt when he was not scheduled to work. Fitzgerald expressed to Blackburn and Britt that the reprimand was meritless and motivated by his age and prior complaints.

In September 2017, Britt began exploring the acquisition of a new brush truck for the Glen Wilton Volunteer Fire Department. Britt emailed the County's purchasing manager, Susan Tincher, to request quotes for a new truck. Tincher emailed Britt the quotes and copied Fitzgerald. On November 3, Britt passed the information to Glen Wilton's chief,

3

Tim Keyser. Britt's email included his "recommendation[] that the Ford be chosen." J.A. 264.

Before Keyser could respond, the department experienced further upheaval with Britt's departure on November 20, 2017. Fitzgerald testified that Larrowe immediately met with him and the other battalion chiefs and asked them to ensure that the County's volunteer departments were "taken care of, did not feel that anything was going to change for them" with Britt gone. J.A. 112.

Keyser emailed Fitzgerald the next day to say that Glen Wilton had "decided to go with" the Ford. J.A. 265. On November 22, Fitzgerald sent a message to Larrowe and the other battalion chiefs informing them that he was "in contact with Glen Wilton" about a new brush truck and that Keyser had "decided to go with the Ford." J.A. 267. Fitzgerald wrote that "Purchasing . . . is just waiting on the go ahead to execute the order" and asked Ferguson, as administrative battalion chief, to "confirm the money" in the budget. *Id.* On December 7, Fitzgerald emailed Tincher "We are good to go" with the Ford. J.A. 269. The next day, Ferguson confirmed that the budget contained sufficient funds and Tincher executed the $37,500 purchase order.

Three months later, on March 16, 2018, Fitzgerald emailed Larrowe to ask about the plan for the old Glen Wilton brush truck once the new one came in. Larrowe did not respond. Fitzgerald wrote Larrowe again on April 27 to let him know that the truck had arrived. Larrowe did reply to this email, asking Fitzgerald, "Who signed off on the purchase of this truck? Where did the funds come from? When did you get involved?" J.A. 281. Fitzgerald explained that the purchase "was something Britt put in motion" and that "it

4

never would have occurred to [him] that Britt would have executed a bid process for something without approval." J.A. 280–81.

The County terminated Fitzgerald's employment on May 16, 2018. The five-page termination letter signed by Larrowe listed six categories of policy violations justifying the County's decision. The letter explicitly referenced the brush truck purchase, identifying Fitzgerald's "lead role" in "expressly approv[ing], without authority, the purchase of the Glen Wilton brush truck" as a violation of the County's personnel policy. J.A. 275. Per the County, Fitzgerald neither had "authority to make [the purchase], nor did [he] seek or receive appropriate authorization." *Id.*

## B.

Fitzgerald sued Botetourt County in the United States District Court for the Western District of Virginia. He alleged age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 (ADEA). After the County moved for summary judgment, Fitzgerald withdrew his discrimination claim. Although the County described multiple policy violations in the May 16 letter, Fitzgerald and the County agreed that the brush truck purchase was the essential reason for Fitzgerald's termination. Finding that Fitzgerald failed to produce evidence that this was a pretext for retaliation, the district court granted the County's motion for summary judgment. Fitzgerald timely appealed.

5

II.

This Court reviews a grant of summary judgment de novo. *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). Summary judgment is fitting when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We view the facts and all justifiable inferences arising from them in the light most favorable to the non-movant. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013).

III.

The ADEA prohibits an employer from retaliating against an employee for complaining about unlawful age discrimination. *See* 29 U.S.C. § 623(d). An employee may prove retaliation either by direct evidence of retaliatory animus or through the *McDonnell Douglas* burden-shifting framework. *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). When an employee proceeds, as here, under *McDonnell Douglas*, he "must first establish a *prima facie* case of retaliation by showing that (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal nexus existed between the protected activity and the adverse action." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 902 (4th Cir. 2024). If the employee successfully makes out a *prima facie* case, the burden shifts to the employer to show that the adverse action was the result of a legitimate non-retaliatory reason. *Foster v.*

6

*Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The employer's burden at this step "is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019). If the employer makes this showing, the burden shifts back to the employee to prove by a preponderance of the evidence that the employer's non-retaliatory reason was in fact pretextual. *Foster*, 787 F.3d at 250. This final step demands proof that retaliation was a but-for cause of the adverse action. *Id.* at 252.

The district court accepted that Fitzgerald established a *prima facie* case of retaliation with his July 2017 complaint and May 2018 termination. The County does not challenge that premise on appeal. Nor is there any meaningful dispute that the County articulated a legitimate non-retaliatory reason for Fitzgerald's termination: the unauthorized purchase of the brush truck in violation of County policy. We thus consider only whether there is a genuine issue of material fact as to pretext.

At the pretext step, Fitzgerald must show that retaliation and not the brush truck purchase was the real motivation for his termination. He may demonstrate pretext with evidence that the County's explanation was false, based on a mistake of fact, or inconsistent over time. *Haynes v. Waste Connection, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). But he cannot survive summary judgment "by focusing on minor discrepancies that do not cast doubt on the explanation's validity" or by raising irrelevant points. *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006).

We agree with the district court that Fitzgerald failed to produce evidence showing that the unauthorized purchase of the brush truck was a false or otherwise pretextual reason.

7

Under the personnel policy cited in his termination letter, "Only authorized County employees may purchase goods and services on behalf of the County. Unauthorized employees and employees who do not comply with the provisions of the [Viginia Public Procurement Act] and of the manual shall be subject to disciplinary action up to an[d] including termination of employment." J.A. 276. The purchasing manual incorporated into the policy by reference explains that the "County Administrator is designated the purchasing agent and shall serve as the principal public purchasing official for the County. The purchasing agent may delegate the administrative purchasing responsibility to a responsible subordinate." J.A. 292.

The County's personnel policy and purchasing manual identify who may wield the County's procurement power: the county administrator and individuals to whom the administrator delegates purchasing responsibility. The policy is clear that an employee who makes a purchase without authorization may be terminated. As Fitzgerald conceded before the district court and at oral argument, if he lacked authorization to purchase the brush truck then he cannot show that he would not have been terminated but for retaliation. *See* J.A. 336–37.

Fitzgerald's arguments that he had authorization to make the purchase are unavailing. Take his argument about Larrowe. Fitzgerald contends that Larrowe's awareness of the impending purchase and failure to intervene together add up to authorization. The district court identified Fitzgerald's November 22, 2017 email to Larrowe and the other battalion chiefs as the only evidence that Larrowe knew about the truck before it was purchased. Nowhere in the email does Fitzgerald ask Larrowe for

8

authorization or indicate that he intended to purchase the truck without it. We cannot reasonably infer from Larrowe's lack of response the kind of authorization contemplated by the County's policy.

Nor does Larrowe's comment about ensuring the volunteer departments were "taken care of" after Britt's departure show that Fitzgerald had authorization to purchase the brush truck. Fitzgerald produces no evidence that at the time of the meeting Larrowe knew that Britt had been communicating with Glen Wilton about a new truck. Larrowe's general charge to the battalion chiefs cannot reasonably be understood as delegating to Fitzgerald the authority to spend $37,500 in County funds on a purchase that Larrowe did not know about. It was not error for the district court to decline to treat this comment as a delegation of purchasing authority.

Fitzgerald also argues that he had authorization through Britt. On this view, Fitzgerald was "simply the administrative mule" carrying out a directive from someone above him in the chain of command. Opening Br. 25. But Britt's last day as fire chief was November 20, 2017—before a decision to purchase a particular truck had been made. As the district court recognized, "any authority Britt had to approve the purchase (or to delegate to Fitzgerald) ceased upon his departure." *Fitzgerald v. Botetourt Cnty.*, No. 7:19-cv-00825, 2021 WL 6062825, at *6 (W.D. Va. Dec. 22, 2021). Fitzgerald cannot plausibly point to Britt as the source of his purchasing authority under the personnel policy.

Fitzgerald downplays the importance of the policy's limits on who may make purchases on the County's behalf. He suggests that because the policy does not define what

9

it means for an employee to be "authorized" that it does not really matter whether purchasing authority has been clearly conveyed. *See* Opening Br. 16–17.

But strict limits make good sense. Local governments could hardly hope to balance their budgets if any employee could expend municipal funds with impunity. Even assuming that every purchase by a government employee is made with the utmost prudence and good faith, budgetary confusion is likely when the left hand does not know what the right hand is doing. Botetourt County had an undeniable interest in avoiding unauthorized expenditures. It was up to Fitzgerald to produce evidence to overcome the natural assumption that the unauthorized purchase was the real reason for his termination. This he did not do.

## IV.

Because we find that Fitzgerald failed to raise a triable issue of fact as to pretext, we affirm the judgment of the district court granting summary judgment to the County.

*AFFIRMED*